U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2019 OCT 21 PM 1:05

CLERK
BY ⟨signature⟩
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

EXIST, INC.,  )
              )
Plaintiff,    )
              )
v.            )  Case No. 2:19-cv-00058
              )
THE VERMONT COUNTRY STORE, INC.,  )
              )
Defendant.    )

## OPINION AND ORDER
## DENYING PLAINTIFF'S MOTION TO DISMISS OR STRIKE DEFENDANT'S COUNTERCLAIM AND IN THE ALTERNATIVE MOTION TO TRANSFER AND GRANTING PLAINTIFF'S MOTION FOR VOLUNTARY DISMISSAL
(Docs. 31 & 32)

Plaintiff Exist, Inc. ("Plaintiff") is a Florida-based resort apparel company which filed suit in the United States District Court for the Southern District of Florida against Defendant The Vermont Country Store, Inc. ("Defendant") seeking a declaration of rights with regard to an alleged copyright infringement. On April 18, 2019, the case was transferred to this court after the Southern District of Florida determined it did not have personal jurisdiction over Defendant. Following the transfer, on April 19, 2019, Defendant filed an Answer to Plaintiff's Amended Complaint which interposed a counterclaim alleging copyright infringement and seeking injunctive relief and damages. (Doc. 25.)

David M. Pocius, Esq. and Nancy J. Flint, Esq. represent Plaintiff. Mark F. Werle, Esq., Matthew Scott Nelles, Esq., and Stacy O. Stitham, Esq. represent Defendant.

### I. Factual and Procedural Background.

#### A. Factual Allegations.

The facts are derived from the parties' pleadings, briefing, and declarations. Plaintiff sells resort apparel imprinted with original fabric designs that are the subject of copyright registration with the United States Copyright Office. One such design is the

Fish Print Design, which Plaintiff alleges was created in Florida in 1993 and was registered with the United States Copyright Office in 1997. The individual who created the Fish Print Design, Shaul Ashkenazy, is still employed by Plaintiff and located in Florida, as are all records related to the Fish Print Design.

The Rock Fish Design was created and published in 1996 by Demy, Inc., d/b/a M. Mac, Inc., a now dissolved California corporation. Defendant acquired "all of the exclusive rights" to the Rock Fish Design through assignment in April of 2018. (Doc. 25 at 4, ¶ 8.) The timing of the creation date of the Fish Print Design and the publication date of the Rock Fish Design are disputed, as is whether Plaintiff had access to the Rock Fish Design and copied it.

Plaintiff operates an interactive website through which apparel is available for purchase. Plaintiff also sends mail-order catalogs directly to merchants and attends a number of trade shows in the United States and other locations at which it advertises its apparel. Plaintiff asserts that it has not sent any catalogs to any entity or person in Vermont, is not registered to do business in Vermont, has not conducted any business in Vermont, and has no agents conducting business on its behalf in Vermont. Since 2015, Plaintiff has fulfilled one purchase order for $489.00 for a customer located in Vermont, which constituted less than 0.001% of Plaintiff's gross revenues for that year.

In late summer 2018, Defendant "became aware" that Plaintiff was selling clothing items with the Fish Print Design. (Doc. 25 at 4, ¶ 9.) Defendant sent a cease and desist letter to Plaintiff in September of 2018 asserting that the Fish Print Design infringed upon the Rock Fish Design copyright. Thereafter, Plaintiff filed its declaratory judgment action in the Southern District of Florida "with respect to Defendant's threat of copyright infringement," seeking to clarify the parties' respective copyright rights. (Doc. 5 at 2, ¶ 7.)

Plaintiff alleges that Defendant "has communicated an imminent threat to Plaintiff" regarding the infringement of the Rock Fish Design copyright, which Plaintiff asserts was registered on June 2, 1998. *Id.* at 1, ¶ 5. It further alleges that Defendant "is not the owner of the ROCK FISH Fabric Design copyright" and thus "has no rights to

enforce [it.]" *Id.* at 2, ¶ 6. In the alternative, Plaintiff claims that it "has not infringed any such alleged copyright," *id.*, and that the 1998 registration is "invalid." *Id.* at 2, ¶ 9.

### B. Southern District of Florida Proceedings.

On March 19, 2019, Defendant filed a motion to dismiss or transfer in the Southern District of Florida, seeking dismissal for lack of personal jurisdiction under Florida's long-arm statute and the Due Process Clause to the Fourteenth Amendment of the United States Constitution. Plaintiff opposed dismissal and transfer, arguing that the Southern District of Florida had specific jurisdiction over its copyright infringement claim and Defendant had sufficient minimum contacts with Florida because of its website. Plaintiff also asserted that the relevant factors for transfer under 28 U.S.C. § 1404(a) favored Florida over Vermont and addressed those factors at some length in its briefing. In opposing Defendant's motion to dismiss or transfer, Plaintiff did not argue that the District of Vermont lacked personal jurisdiction over Plaintiff, rendering that forum inappropriate as the transferee jurisdiction.

On April 18, 2019, the Southern District of Florida granted Defendant's motion and transferred the case to the District of Vermont. In doing so, the Southern District of Florida analyzed Florida's long-arm statute, conducted a due process analysis pursuant to the Fourteenth Amendment, and concluded that it was "not a close call" to find that the court lacked personal jurisdiction over Defendant. (Doc. 21 at 4.) It ordered the case transferred to the District of Vermont.

### C. Defendant's Compulsory Counterclaim.

On April 19, 2019, following transfer to this court, Defendant filed an Answer and compulsory counterclaim alleging that Plaintiff's distribution of clothing items with the Fish Print Design infringes on Defendant's right to use the Rock Fish Design copyright in violation of 17 U.S.C. § 501 *et seq.* and 17 U.S.C. § 106 of the Copyright Act of 1976. Defendant alleges that the creator of the Rock Fish Design "complied in all respects with the requirements of the Copyright Act" in applying for and receiving registration from the Register of Copyrights, and that Defendant is "the present owner of all of the exclusive rights to the 'ROCK FISH' copyright." (Doc. 25 at 4, ¶¶ 7-8.) While Plaintiff

3

"had access" to and was "on notice" of the Rock Fish Design, Plaintiff, without authorization, allegedly "caused to be manufactured, has sold, continues to sell . . ., and is causing to be distributed items of clothing entitled 'Fish Print' that are copies of, and bear constituent elements of, the 'ROCK FISH' design." *Id.* at 5, ¶¶ 15-16. Defendant further asserts that Plaintiff acted willfully and recklessly and "has derived and continues to derive substantial revenues from the sale of its 'Fish Print' dresses and clothing." *Id.* at 6, ¶ 21.

As a result of Plaintiff's alleged infringement, Defendant states that it "has suffered and continues to suffer irreparable harm, and is entitled to injunctive relief and an order impounding all infringing materials." *Id.* at 6, ¶ 22. Defendant seeks dismissal of Plaintiff's claim with prejudice and an award of reasonable attorney's fees incurred in defending against Plaintiff's action. For further relief, Defendant asks that Plaintiff "be enjoined and restrained during the pendency of this action, and permanently, from infringing in any manner the 'ROCK FISH' design" and from using the Fish Print Design. *Id.* at 6-7, ¶ 3. Defendant also seeks an award of actual damages pursuant to 17 U.S.C. § 504(b); "[p]rofits derived by [Plaintiff] attributable to its 'Fish Print' dresses and clothing" pursuant to 17 U.S.C. § 504(b), *id.* at 7, ¶ 4(b); and statutory damages pursuant to 17 U.S.C. § 504(c).

Plaintiff responded on May 13, 2019, moving to dismiss or strike Defendant's counterclaim or, in the alternative, to transfer it to the Southern District of Florida. (Doc. 31.) On the same day, Plaintiff moved to voluntarily dismiss its declaratory judgment action. (Doc. 32.) Defendant opposed both motions. On June 21, 2019, Plaintiff replied, on which date the court took the pending motions under advisement.

## II. Conclusions of Law and Analysis.

### A. Whether Defendant's Counterclaim Should Be Dismissed for Lack of Personal Jurisdiction or, in the Alternative, Whether It Must Be Transferred.

Plaintiff seeks dismissal of Defendant's counterclaim, asserting this court lacks personal jurisdiction over Plaintiff. In the alternative, Plaintiff requests that this lawsuit

4

be transferred back to the Southern District of Florida. Defendant responds that this court need not establish independent jurisdiction over a compulsory counterclaim or personal jurisdiction over a plaintiff that has initiated a lawsuit which has been transferred.

28 U.S.C. § 1404(a) provides that: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." The Court of Appeals for the Federal Circuit has held that, under 28 U.S.C. § 1404, "[t]here is no requirement under § 1404(a) that a transferee court have jurisdiction over the plaintiff or that there be sufficient minimum contacts with the plaintiff; there is only a requirement that the transferee court have jurisdiction over the defendants in the transferred complaint." *In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009).

In other words, "there is no due-process concern, at least to the level of requiring minimum contacts with the new forum, for plaintiff when a case is transferred under § 1404(a)," because "even with a counterclaim, plaintiff chose to initiate litigation enabling the counterclaim. In no sense is plaintiff unilaterally being haled into court to defend." *Murray v. Scott*, 176 F. Supp. 2d 1249, 1255-56 (M.D. Ala. 2001). "To the extent [plaintiff] is seeking minimum *procedural* due-process protection, § 1404(a) provides such." *Id.* at 1256 (emphasis in original). When a transferring court finds "transfer to [the transferee] district proper, [] there is no reason to question its decision." *Id.* at 1256.

Correspondingly, a "'[p]laintiff may not object that the court lacks personal jurisdiction or that venue is improper for purposes of adjudicating a compulsory counterclaim that defendant has interposed.'" *Gary Friedrich Enters., LLC v. Marvel Enters., Inc.*, 2011 WL 13262163, at *2 (S.D.N.Y. May 4, 2011) (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1416 (3d ed. 2010)) (alteration in original). "[When] the transferring court has already deemed [the transferee] district appropriate, defendants are free to assert their counterclaim even though venue might have been improper if it had been brought as an independent action."

*Id.* "[N]o independent basis of federal jurisdiction is needed for the court to adjudicate the ancillary issues [including compulsory counterclaims] thus raised, if the main claim itself presents a colorable federal issue." *Harris v. Steinem*, 571 F.2d 119, 121-22 (2d Cir. 1978).

"Under law-of-the-case principles, if the transferee court can find the transfer decision plausible, its jurisdictional inquiry is at an end." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 819 (1988). The Second Circuit has not articulated a standard for evaluating when a retransfer is appropriate. However, district courts in the Second Circuit have followed the Fifth Circuit's standard that "[i]f [a] motion to transfer is granted and the case is transferred to another district, the transferee-district should accept the ruling on the transfer as the law of the case and should not re-transfer except under the most impelling and unusual circumstances or if the transfer order is manifestly erroneous." *In re Cragar Indus. Inc.*, 706 F.2d 503, 505 (5th Cir. 1983) (internal quotation marks omitted); *see Repp v. Webber*, 142 F.R.D. 398, 400-01 (S.D.N.Y. 1992) (quoting *In re Cragar*, 706 F.2d at 505); *Gary Friedrich Enters., LLC, v. Marvel Enters., Inc.*, 2008 WL 4129640, at *3 (S.D.N.Y. Sept. 4, 2008) (same). "Impelling and unusual circumstances arise when 'unanticipatable post-transfer events frustrate the original purposes of the transfer.'" *Repp*, 142 F.R.D. at 400-01 (quoting *In re Cragar*, 706 F.2d at 505); *see also Washington Nat. Life Ins. Co. of N.Y. v. Morgan Stanley & Co. Inc.*, 974 F. Supp. 214, 220 (S.D.N.Y. 1997) (noting that, in the context of a motion for retransfer, "[t]he Court may depart from the law of the case if the previous decision is clearly erroneous").

"Motions to retransfer are highly disfavored under the doctrine of law of the case." *Gorzynski v. JetBlue Airways Corp.*, 10 F. Supp. 3d 408, 412 (W.D.N.Y. 2014). "Indeed, the policies supporting the doctrine [of law of the case] apply with even greater force to transfer decisions than to decisions of substantive law; transferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation." *Christianson*, 486 U.S. at 816. The Supreme Court has cautioned that "a perpetual game of jurisdictional ping-pong" in which "the litigants are

bandied back and forth helplessly between two courts, each of which insists the other has jurisdiction," is "exasperating for the litigants" and "wasteful for all concerned[]." *Id.* at 818.

In this case, Plaintiff was afforded due process when the Southern District of Florida conducted its § 1404(a) analysis. If Plaintiff "could successfully assert lack of personal jurisdiction as a defense to the counterclaim, [D]efendant[], while still required to defend in the original action, would have to forfeit [its] claims arising from the same transaction." *Grupke v. Linda Lori Sportswear, Inc.*, 174 F.R.D. 15, 18 (E.D.N.Y. 1997). This would encourage forum shopping, as well as the needless expenditure of party and judicial resources as a case is transferred back and forth between competing jurisdictions. *See U.S. Bank N.A. v. Bank of Am. N.A.*, 916 F.3d 143, 153 (2d Cir. 2019) (observing that allowing the case to remain in the transferee court "notwithstanding that the . . . transfer order was based on a mistake of law, is a far lesser evil than subjecting the parties to the further expense and delay of a retransfer, with the attendant risk of still further rounds of transfers").

The Southern District of Florida rejected Plaintiff's arguments as to why the relevant factors under 28 U.S.C. § 1404(a) favored Florida. The only changed circumstances Plaintiff cites is Defendant's filing of a counterclaim. There was no error in the Southern District of Florida's § 1404(a) analysis; the Southern District of Florida found that transfer was appropriate, its decision was plausible, and there is no factual or legal basis to disturb it. *See Allfirst Bank v. Progress Rail Servs. Corp.*, 178 F. Supp. 2d 513, 517 (D. Md. 2001) (rejecting a motion to retransfer, noting that the movant was "in effect requesting this Court to act as an appellate court and reverse," and holding that "[a] transferee court should accept the ruling of the transferor court as the law of the case and should not retransfer except under the most impelling and unusual circumstances or if the transfer order is manifestly erroneous") (citation and internal quotation marks omitted). For the reasons stated above, Plaintiff's motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer Defendant's counterclaim to the Southern District of Florida is DENIED.

## B. Whether Defendant's Counterclaim Should Be Struck as Duplicative.

Citing Fed. R. Civ. P. 12(f), Plaintiff moves to strike Defendant's counterclaim as duplicative, contending the counterclaim is "merely a 'mirror image' of Plaintiff's cause of action." (Doc. 31 at 14.) Defendant counters that while Plaintiff seeks only declaratory relief, its counterclaim requests declaratory relief as well as injunctive relief, actual and statutory damages, profits, costs, and attorney's fees. Defendant points out that if it prevailed on Plaintiff's declaratory judgment claim, it would not be entitled to the additional remedies it seeks.

Fed. R. Civ. P. 12(f) provides that "[t]he court may strike from a pleading . . . any redundant . . . matter." "[W]hen a counterclaim is merely a 'mirror image' of the complaint, the counterclaim serves no purpose and may be dismissed." *Arista Records LLC v. Usenet.com., Inc.*, 2008 WL 4974823, at *3 (S.D.N.Y. Nov. 24, 2008); *Orientview Techs. LLC v. Seven For All Mankind, LLC*, 2013 WL 4016302, at *1 (S.D.N.Y. Aug. 7, 2013) ("A redundant counterclaim may be dismissed [w]hen a counterclaim is merely the 'mirror image' of an opposing party's claim and the counterclaim serves no independent purpose.") (alteration in original) (internal quotation marks omitted). "A mirror image counterclaim is generally the exact opposite of the original claim with no added nuances." *Canon U.S.A., Inc. v. F & E Trading LLC*, 2017 WL 4357339, at *10 (E.D.N.Y. Sept. 29, 2017). "[A] counterclaim is not duplicative or redundant if it asserts an independent case or controversy that survives the dismissal of the plaintiff's claim." *Marvel Worldwide, Inc. v. Kirby*, 756 F. Supp. 2d 461, 467 (S.D.N.Y. 2010).

Here, Defendant requests not only a declaratory judgment under the Rock Fish Design copyright but also affirmative relief in the form of an injunction, actual and statutory damages, profits attributable to Plaintiff's alleged infringement, costs, and attorney's fees. Because the relief Defendant seeks would not be available even if it prevailed on Plaintiff's request for declaratory judgment, Defendant's counterclaim is not a mirror image. *See Five Star Dev. Resort Cmtys. LLC v. iStar RC Paradise Valley LLC*, 2012 WL 1003557, at *5 (S.D.N.Y. Mar. 26, 2012) ("[T]he Court finds that Claim I and

8

the First Counterclaim are not simply mirror images of one another, as the Counterclaim also seeks a declaration that iStar is entitled to exercise default remedies under specified documents."). For this reason, the court DENIES Plaintiff's request to strike Defendant's counterclaim on "mirror image" grounds.

### C. Whether Plaintiff May Voluntarily Dismiss Its Claim.

In the alternative to the court dismissing or transferring Defendant's counterclaim, Plaintiff requests to voluntarily dismiss its suit without prejudice. Fed. R. Civ. P. 41(a)(2) provides that:

> [A]n action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication. Unless the order states otherwise, a dismissal under this paragraph . . . is without prejudice.

"A voluntary dismissal without prejudice under Rule 41(a)(2) will be allowed if the defendant will not be prejudiced thereby." *D'Alto v. Dahon Cal., Inc.*, 100 F.3d 281, 283 (2d Cir. 1996) (citation and internal quotation marks omitted); *see also Gap, Inc. v. Stone Int'l Trading, Inc.*, 169 F.R.D. 584, 588 (S.D.N.Y. 1997) ("[T]he presumption in this circuit is that a court should grant a dismissal pursuant to Rule 41(a)(2) absent a showing that defendants will suffer substantial prejudice as a result.") (citations omitted).

The Second Circuit has identified two distinct lines of authority for determining when dismissal without prejudice will harm a defendant. First, legal prejudice to a defendant renders a dismissal without prejudice improper. *See Kwan v. Schlein*, 634 F.3d 224, 230 (2d Cir. 2011). "Legal prejudice would occur, for example, if dismissal of the plaintiff's case also impairs the ability of a defendant to pursue a counterclaim in the same action that plaintiff seeks to dismiss." *Brown v. Nat'l R.R. Passenger Corp.*, 293 F.R.D. 128, 131 (E.D.N.Y. 2013) (citation omitted); *see also Camilli v. Grimes*, 436 F.3d 120, 124 (2d Cir. 2006) (holding that "plain legal prejudice" concerns "the plight of a defendant who is ready to pursue a claim against the plaintiff *in the same action* that the plaintiff is seeking to have dismissed") (emphasis in original).

9

Because Defendant's counterclaim can remain in this court independent of Plaintiff's request for a declaratory judgment, dismissal of Plaintiff's claim would not legally prejudice Defendant. Defendant, as the alleged assignee of the Rock Fish Design copyright, may bring an affirmative claim for copyright infringement against Plaintiff. *See* 17 U.S.C. § 501(b) ("The legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it."); *John Wiley & Sons, Inc. v. DRK Photo*, 882 F.3d 394, 410 (2d Cir. 2018), *cert. denied*, 139 S. Ct. 237 (2018) ("[A]n exclusive licensee is a 'legal owner' of an exclusive right for purposes of a copyright infringement action under section 501(b)[.]").

In addition, a court may continue to exercise jurisdiction over a compulsory counterclaim despite voluntary dismissal of a plaintiff's original claim "so long as it ha[s] subject matter jurisdiction over the main claim." *Eberhard Inv. Assocs., Inc. v. Santino*, 2004 WL 594728, at *2 (S.D.N.Y. Mar. 25, 2004) (quoting 8 James Wm. Moore et al., Moore's Federal Practice, § 41.40[8][a] (3d ed. 1997)) (holding court could independently adjudicate counterclaim for declaratory judgment of copyright ownership).[1] Defendant's counterclaim is compulsory under Fed. R. Civ. P. 13(a) because its allegations of infringement "arise[] out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a). 28 U.S.C. §

---

[1] According to a leading treatise:

> The purpose of th[e] [counterclaim] portion of [Fed R. Civ. P. 41(a)(2)] is to preserve the district court's jurisdiction over the parties and the counterclaim. Ordinarily the defendant's counterclaim can stand on its own and a dismissal can be granted on the plaintiff's claims without affecting the adjudication of the counterclaim. If the counterclaim is compulsory, it is settled that the district court has ancillary jurisdiction, which is now called supplemental jurisdiction under Section 1367 of Title 28 of the United States Code, to decide it even though the plaintiff's claim is dismissed.

9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2365 (3d ed. 2019) (footnotes omitted).

1338(a) confers original and exclusive subject matter jurisdiction to federal courts over copyright claims. The court thus retains jurisdiction over Defendant's counterclaim even if Plaintiff's claim is dismissed. *See Empire United Lines Co., Inc. v. Presniakovas*, 2017 WL 4233032, at *3 (E.D.N.Y. Sept. 22, 2017) ("[W]hen counterclaims are compulsory, as they are here, the Court may retain jurisdiction over the counterclaims, even if plaintiff's claims are dismissed."); *View 360 Solutions LLC v. Google, Inc.*, 310 F.R.D. 47, 50-51 (N.D.N.Y. 2015) (observing that despite dismissal of certain claims, the court "possesse[d] original subject-matter jurisdiction . . . under 28 U.S.C. §§ 1331 and 1338," as the remaining cross-counterclaims were compulsory).

The possibility that Plaintiff will reinitiate litigation against Defendant is not a basis for finding legal prejudice. "[S]tarting a litigation all over again does not constitute legal prejudice" unless "'the cause has proceeded so far that the defendant is in a position to demand on the pleadings an opportunity to seek affirmative relief and he would be prejudiced by being remitted to a separate action.'" *D'Alto*, 100 F.3d at 283 (quoting *Jones v. Sec. & Exchange Comm'n*, 298 U.S. 1, 19-20 (1936)). Defendant thus will not suffer legal prejudice from dismissal of Plaintiff's action for declaratory judgment because Defendant can still "insist that the cause proceed to a decree" in this court despite dismissal. *D'Alto*, 100 F.3d at 283 (quoting *Jones*, 289 U.S. at 20).

In the absence of legal prejudice, the Second Circuit's second line of authority requires the court to consider the following factors in determining whether a claim should be dismissed with prejudice: (1) "plaintiff's diligence in bringing the motion;" (2) "any 'undue vexatiousness' on plaintiff's part;" (3) "the extent to which the suit has progressed, including the defendant's effort and expense in preparation for trial;" (4) "the duplicative expense of relitigation;" and (5) "the adequacy of plaintiff's explanation for the need to dismiss." *Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990).

The first and third *Zagano* factors favor dismissal without prejudice because Plaintiff waited only a month to seek voluntary dismissal after transfer of its lawsuit to this court, although the action itself has been pending since October of 2018. *See Wambolt v. State's Attorney of Chittenden Cty.*, 2008 WL 2217045, at *1 (D. Vt. May 27,

2008) (holding *Zagano* factors favored dismissal without prejudice where plaintiff filed motion "nearly one month after his request for appointed counsel was denied"). Discovery has not yet taken place, and Defendant's "effort and expense in preparation for trial has been minimal." *Elliot v. Buffalo City Sch. Dist.*, 2018 WL 1726535, at *3 (W.D.N.Y. Apr. 10, 2018) (granting motion for voluntary dismissal without prejudice despite Defendant filing Answer, two motions, participating in Rule 26(f) conference, and sending deposition notices and subpoenas); *see also Catanzano v. Wing*, 277 F.3d 99, 110 (2d Cir. 2001) (holding district court abused discretion in not dismissing claim without prejudice where the "claim has thus far not been litigated and only halting discovery has taken place").

The fourth *Zagano* factor, risk of duplicative relitigation, is in equipoise because although this case "has barely been litigated at all," *Catanzano*, 277 F.3d at 110, two lawsuits on the same subject matter in two different jurisdictions is not cost effective for either the courts or parties involved and presents the possibility of inconsistent results.

The second and fifth *Zagano* factors weigh in favor of denying Plaintiff's motion for voluntary dismissal without prejudice as there is some concern of "undue vexatiousness" and the lack of an adequate explanation for the dismissal. *See Zagano*, 900 F.2d at 15 (deeming plaintiff's desire to abandon her claims on the eve of trial as "evidence that she was perfectly happy to have the lawsuit out there until all of a sudden she had to do something with it") (internal quotation marks omitted). Plaintiff sought dismissal of its claim only after Defendant asserted its compulsory counterclaim. In this respect, Plaintiff's desire to abandon its claim appears strategic.

The court has three options for disposition of Plaintiff's motion for voluntary dismissal: (1) force Plaintiff to litigate a claim it seeks to dismiss in the District of Vermont; (2) force Plaintiff to forgo the right to bring this claim elsewhere as a condition of dismissal; or (3) allow Plaintiff to dismiss its claim here and risk the possibility that Plaintiff will initiate duplicative litigation elsewhere. Among these options, the third best reflects the procedural posture of the case and Defendant's ability to protect itself from vexatious litigation in another forum. *See Colo. River Water Conservation Dist. v.*

*United States*, 424 U.S. 800, 817, 819 (1976) (observing that "[a]s between federal district courts, . . . though no precise rule has evolved, the general principle is to avoid duplicative litigation," and discussing the factors that "clearly counsel against concurrent federal proceedings").

On balance, the *Zagano* factors favor dismissal of Plaintiff's claim without prejudice due to Plaintiff's diligence in filing its motion, the nascent stage of the litigation, and Defendant's ability to litigate its counterclaim in this court. *See Ruggieri-Lam v. Oliver Block, LLC*, 2016 WL 520986, at *2 (D. Vt. Feb. 8, 2016) (granting motion to voluntarily dismiss without prejudice where the suit "remains in the early stages of discovery[,] [n]o depositions have been taken, no dispositive motions have been filed, [] no trial date has been scheduled[, and] [t]he ENE session has not yet occurred"). Although this does not prevent Plaintiff from forum shopping, its ability to do so is circumscribed by the need to establish personal jurisdiction over Defendant in any court in which Plaintiff brings suit, the requirement that compulsory counterclaims be asserted or waived, and the federal courts' avoidance of duplicative litigation.

### D. After Dismissal of Plaintiff's Claim, Whether This Court May Exercise Personal Jurisdiction Over Plaintiff in the Litigation of Defendant's Counterclaim.

Finally, Plaintiff is incorrect in its premise that any judgment entered against it in this case after dismissal of its claim will be void for lack of personal jurisdiction. Personal jurisdiction is waivable, and Plaintiff consented to this court's jurisdiction when it did not assert lack of personal jurisdiction as a ground for objecting to the transfer from the Southern District of Florida to the District of Vermont. *See Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 168 (1939) (ruling personal jurisdiction "may be lost by failure to assert it seasonably, by formal submission in a cause, or by submission through conduct"); *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 134 (2d Cir. 2011) ("A court will obtain, through implied consent, personal jurisdiction over a defendant if the actions of the defendant during the litigation amount to a legal submission to the jurisdiction of the court, whether voluntary or not.") (alterations and

citation omitted). In any event, the Federal Circuit has observed, "[t]here is no requirement under [28 U.S.C.] § 1404(a) that a transferee court have jurisdiction over the plaintiff or that there be sufficient minimum contacts with the plaintiff[.]" *In re Genentech, Inc.*, 566 F.3d at 1346. To hold to the contrary would set in motion the "perpetual game of jurisdictional ping-pong" which the Supreme Court has proscribed. *Christianson*, 486 U.S. at 418.

## CONCLUSION

For the foregoing reasons, the court DENIES Plaintiff's motion to dismiss or strike the counterclaim or, in the alternative, to transfer the counterclaim, (Doc. 31) and GRANTS Plaintiff's motion to voluntarily dismiss its claim without prejudice. (Doc. 32.) Defendant's counterclaim shall remain pending before the court.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 21st day of October, 2019.

Christina Reiss, District Judge
United States District Court